Our last case of today for this panel, number 17-2597, Pillardy v. Township of Millburn et al., Mr. Durkin and Ms. Lyle. Good morning, Judge, may I have a motion? Yes, go ahead. Thank you. Good morning, Judge and judges, Dennis Durkin on behalf of Michael Pillardy, who is here present in court. If I may, I'd like to reserve three minutes for rebuttal, and at risk of imposing on the court, I will note in advance, I am a radiation survivor, so I don't have any lymph nodes or saliva glands. Occasionally, I begin to get choked up, which is why I'm perfectly fine. It's very impolite, and I apologize for that, so I just wanted to alert you to that. Thank you. If I may, this is an important, but relatively simple and direct case to present. A fact finder could say we reject the evidence, we've heard it, it's been presented, and we don't believe it. We don't think that the plaintiff has sustained his burden by a preponderance of the credible evidence. What the record clearly shows, however, is that you can't say there is no issue for determination, and that's the error of the district court in this proceeding. On the evidence that was submitted in the record to the district court, the district court found there was no set of facts upon which a reasonable jury, acting responsibly, could rationally conclude that the township retaliated against Pillardy for exercise of a protected interest. Respectfully to the district court, the evidence of that very simple proposition is overwhelming, even though at each stage of it, it is subject to dispute. So is your, which argument do you really want to address? Do you want free speech, or association, or, is it a preference you have? It's an association claim, Judge, but in order to avoid, if I were in defense, and someone made an association claim, I would want to see whether or not that individual had ever actually been an active union member, or if, as an after-the-fact fig leaf, someone was attempting to claim that even though you may have had a legitimate reason for the adverse action that you took, you really did it for the fact that I was a Republican, or a Presbyterian, or a union member, whatever that may be. So the fact that, as a respectful advocate, that is to say, respecting both the court and the jury, but certainly my jury, I would want to be in a position to say, we don't come here as an after-the-fact. We come here in a real-life way. We are attempting to take it from the drawing board to real life to show you how this really happens. So, when you have, as we did here, and I will get ahead of the chronology just a little bit in order to make the argument that the court is, to address the issue that the court is directing me to, Mr. Gordon, if believed, if Polari's evidence is believed, told his predecessor, who was also driven from the police department, that is, Lieutenant Brown, and third parties when it was Lieutenant Polari, Lieutenant and then Captain Polari's opportunity to become the chief, I, so long as I am the township administrator, a union man will not be chief. Now, that means the person who, by New Jersey law, was the appointing authority, the hiring authority, the disciplinary authority, the individual who was reposed with public authority for all matters, promotion, discharge, demotion, all acknowledgments including salary, said, I have grafted onto this procedure a prohibition that prevents you from exercising a right protected by the Constitution, in this instance, namely, association, and so long as you have that, I will not give you a position to which you may be overwhelmingly eligible, which your appointment may benefit the town, and I won't do that because I am against a union. That's a very difficult thing for someone to believe in this day and age. So, and again, this is all associational, right? Yes, Judge. So, it's, okay. What elements do you need to have a personal retaliation claim with respect to association? That the fact that I was in the association was a primary motivating factor with regard to the animus directed by the municipality or the public entity against me, and that as an individual of common intelligence and firm disposition, I would be in a position to resist it. This court under Killian indicates a desire to extend it. I would direct this court, as we do in our reply brief, to Justice Harlan in his 1958 decision in NAACP versus Alabama, where he basically says, in the event an association claim is inadequate, what value is there to the association benefit? And what I would point this court to in this record, which is why I say there is a good and substantial opportunity for this court to take the invitation contained in Killian to extend the association to meet the other circuits in the split. Should we accept the invitation to say that if there is an association claim, that it requires it to be a matter of public concern, or should we eschew that? No, I don't think you have to do either. This is why. Association is always a matter of public concern. It's a constitutionally protected right. So long as the fact that I was exercising that right in a way that the employer or entity acknowledged was a factor in its determination, it is exactly the same thing as saying, I read a newspaper, I worship a particular church, I have any other interest that is protected by the constitution, respectfully. What business is it of Mr. Gordon if I am or am not a member of a union? If, and this is why I said I got ahead of my chronology a little bit, police employment in New Jersey is a very highly regulated profession. Public employment in New Jersey is a very highly regulated status. So if we go back even into the 1940s and before, we can, it's consistent from the 1940s, but let's just go back to there. Public employment in New Jersey had the police, the Public Employment Relations Act and the Public Employment Relations Commission, which allows the municipality to get the benefit of collective bargaining if it accepts the designation of a collective bargaining representative. Millburn did that for decades. It has been an employer recognized by the Public Employment Relations Commission for decades. Number two, to the extent you get that benefit, your employees can only participate with you through the collective bargaining agent. In this instance, it happened to be a union. It doesn't have to be a union, but in this instance, it was a union. That's the employment aspect. That's not the law enforcement aspect of the chain of command. But in that aspect, the aspect that the court is now asking me about, the municipality had an additional procedure. In all the years that Millburn has had a police department, it never once had a chief who wasn't first. It's patrolman, it's sergeant, it's lieutenant, it's captain, then it's chief. Fast forward. How many persons are in the Millburn police? It fluctuates around 35, Judge. 35 to 38. It goes up and down. And in this instance, I respect that question immensely and I'm happy that the court asked it for this very reason. As we go fast forward, there are two things that are important here. Number one, people could not be eligible for either employment in that police department or promotion in that police department unless they held a valid police training certificate, which Mr. Polardi did continuously from his graduation from the state police academy. He had to be a captain too before he'd be considered, didn't he? Well, for all the years before Polardi, the answer to that was yes. But he didn't become a captain until just before he retired, right? In 2012, right? Well, it's a little complicated, but it's not complicated once you take it out. If Gordon is operating in the belief that no one who is a union man can be chief, and you look at the timeline, which is easy to do in New Jersey because of You could look almost as if it was Soviet succession in the Cold War. If he's the premier today, the fellow who is the captain now will succeed to the chief's position with almost arithmetic certainty on this day. The only reason that it's not with arithmetic certainty is because time and grade... It doesn't work that way anymore in the Soviet Union, does it? It doesn't work that way in Russia anymore, does it? Well, I think it's a little... Well, there's a joke in there. I won't say it. Russia can learn from Mr. Gordon, but that's the other end of there. I shouldn't say that in any event. But here's what happens. It often happens in the vagaries of life that reveal what seems to be benign and neutral, and really it's evil hand. Because the ordinary succession, the anticipated succession, was that Applecart was upset by illness. And then in the original diagnosis of Chief Weber's illness, they thought he wasn't coming back. And so you have a retirement of one chief. The intended anointed successor is medically disabled. Mr. Polardi is the next eligible person. And what does Mr. Gordon do? Mr. Gordon does two things that I suggest to you are highly indicative of his retaliation against Mr. Polardi, which are significant to the claim we bring. Number one, he uses public resources to hire not one, but two, surveys from Mr. Fisher, who's a recognized expert in matters of police organization and efficiency in the state of New Jersey, for a study. Now, those are often the pretext upon which retaliation action occurs. Not always, but sometimes. The first Fisher study does not direct any recommendation to the table of organizations such that the captain's position is to be eliminated or reduced. Mr. Gordon testifies that he was after an opinion that would allow him to do that because in the Milburn Fire Department, where he was... But Fisher recommended against it. In the first, he recommended against it. And in the second, and the more important one, Judge, where he said he was solicited by Gordon with the specific intention of eliminating captains. He refused to do it. In the first, he recommended against it. And in the second, he refused to do it. The other significant point is in this time frame, for the first time, Gordon, Milburn through Gordon, floats the idea that we may bring in a representative from another municipality, absolutely unheard of, almost bizarre. And he did that without even asking the other municipality or the other municipality chief. Why would you want to be the chief of two police departments? How could you possibly do it and violate a variety of things? But he did that. And in that regard, he did that because he wanted to make sure Polardi was deemed ineligible for the position that Polardi was otherwise completely eligible for. And in that regard, it's also important when we're talking about whether the association claim is meritorious or not, to note this specific fact. Again, it's hard to make the argument because you don't want to think ill of it. I don't want to think ill of a public official. I certainly don't want to think that a public official could be possessed by such an animus that he would take this action. But he had the unmitigated goal, and he confirmed it, to tell Chief, Lieutenant Polardi, at 15 years in grade, that's how long he had been held as a lieutenant while waiting for those other positions to fall off the board. You don't have sufficient time in grade to be promoted to chief. When Polardi retired, the person who is now, today, the police chief, became the police chief from sergeant to chief in less than three years. Now, it is possible for someone to hear all that evidence and say, not enough. You didn't make out your case. We don't believe you. Gordon has an explanation. Is he asking for damages for failure to promote him to captain, too, or just a failure to put him in the chief position? Just the chief's position, Judge. We recognize that there was animus, but we're not sure we could make it actionable so long as the Weber-Borgenheisen circumstance was in existence. Milburn would be unkind, but it would be incompliant with the procedure it had established in the 40s of patrolman, sergeant, lieutenant, and so on. When Lieutenant Brown went in and asked about it, his resignation was, in part, prompted by the recognition that they're going to have me waiting in this holding pen for a decade or more, and then, because I am an active union member, they're not going to make me chief. Before you sit down, it seems that you're devoting everything in terms of your argument to the association claim as opposed to the free speech claim. I must confess, Judge, I see them as so intertwined. So long as at my trial... That doesn't... You might want to clarify that, because they may be intertwined, but aren't they different? They are different, and I recognize that they're different, but it seems to me, in respect to this court, in respect for our record, the association claim is if Judge Wiginton was mistaken. She was mistaken on both, but mostly the association, because if you look at what Mr. Gordon did, there is no evidence in this record that he said, because of these specific words, I'm taking this specific action, and I would not be candid if I attempted to make this court conclude that. He did... Excuse my voice, I apologize. At every step, it was, I wish an unfettered hand in management, you're sending it away, of an unfettered hand in management, so long as you are a member, so long as you associate, you cannot be, in my town, the chief of police. And he did resign from a certain position. I couldn't hear you, sir. He did resign... When you say, from Mr. Gordon or Mr. Gordon? No, Mr. Polardi. Yes, he did. When he realized, when he was there, realizing he had put 15 years in as lieutenant... Okay, I'm sorry, you're talking about something different. I'm sorry. I thought he resigned... As a union official. Oh, he did. In 2011. He resigned as the president of the Security Officers Association, in order to become more palatable to Mr. Gordon, and that was not sufficient. Well, he did become captain a year later. He didn't become... In 2012. Yes, Judge, but he would not have become the chief. That's the evidence in the case. We would not allow him to be chief, because he was a union man. And I don't mean to go too far afield. I want to keep it focused for you. But it's important to see that Mr. Gordon, who had town-wide responsibility, had done what I would characterize as union busing activity in the fire department. In the fire department, the analogous rank would be battalion chief. He abolished. He succeeded in abolishing battalion chief. And he made it absolutely clear, that if you are part of the FMBA in any significant way, you will not be the fire chief. So you look at that template, you apply it here, you see these facts, you go, Fisher gave you the report. Fisher is the Einstein of these things in New Jersey. He said, you need these people. Notwithstanding that information, you went back to Fisher a second time. And this time you said to him, I want that captain's position eliminated. And he wouldn't give it to you. You then went to a neighboring town. So in your imagination, because the evidence is you neither went to the town, nor went to the individual who was the chief. But you told Polardi and others, I'm going to go to a neighboring town and take their existing incumbent chief before I'm going to make you, put you in the position where you'll be able to do it because you are a union member. Thank you. We'll get you back to the rebuttal. Thank you, Judge. I appreciate it. Ms. Rao. Thank you, your honors. Appellant Mr. Polardi is want to say, quote, the writing was on the wall, unquote. But Polardi was its author. And here's why. Had he stayed at his job, Mr. Polardi would not only have received the retroactive pay in April 2014, he would have been made chief because he would have been the only captain in that rank who could have filled Chief Weber's position when Chief Weber was required to retire at age 65 on May 1st, 2015. May I ask you a legal question? Is there a difference between a speech claim, freedom of speech versus freedom of association? In other words, it would seem that speech relates to certain actions or activities, but association is the right to belong to an organization. And yet the judge here dealt with association claims, saying that they're identical to free speech. And in the footnote for the last footnote in her opinion, says I don't even have to deal with it. It's the same as the other. Is that really true? Aren't the two claims different? I don't know, your honor. But a discussion or a dialogue about whether or not this circuit should join another circuit's analysis of the constitutionally protected free speech and association claims is not only academic on these facts, but should be debated and decided on more trenchant and meaningful facts than those of this case. I would say that Judge Wigington, as we have said in our brief, was completely correct in her analysis of the free speech claim, which she also noted was quite inextricably linked with the union association claim. And I would just like to point out something that Mr. Durkin, my able adversary, said that Mr. Gordon said that a union man will not be chief. Well, that's really interesting because the undisputed facts are that every chief has been a union man because every single uniformed police officer in the township is a member of the union, either the PBA or the SOA. And the chief pays membership dues as well. Every single chief before Mr. Polardi would have become chief, and I will tell you why, because had he waited another year, the only other captain, there are only two in that rank, who can secede to chief left in February 2015, one year after Mr. Polardi voluntarily wanted his retirement application to be effective. A retirement application that he put in in August 2013 to be effective February 1st, 2014, was on terminal leave and an employee getting full pay for those six or seven months while he got a job, a very cushy cream puff job, as the security coordinator for the Board of Education of Millburn, which pays him, yes, yet a second pension. Let me ask you this. You may be right. And you certainly have a good argument with respect to the free speech claim. The question is, does it concern a matter, or does it deal with a matter of public concern? But an association claim, if it is different, can it really be brushed aside in a simple footnote in an opinion? In other words, at the very least, doesn't this case call for a remand? No, it doesn't, Your Honor. And I'm going to tell you why. This whole discussion about association is a MacGuffin. That's a term that was believed to be coined by the filmmaker, Alfred Hitchcock, defined as a plot-enabling device deliberately placed to catch the viewer's attention and to drive the logic of the plot, but which actually serves no further purpose or does nothing except to distract one while trying to figure out its significance. In short, the Maltese Falcon was one, and the microfilm in North by Northwest. It gets the characters together and pits them against one another, but turns out to be worthless. Mr. Polardi played his hand and folded from the game. It doesn't matter what the law says, because if you remand this back to Judge Wigington, the question is, was there an adverse employment action? And is it causally related to the association of free speech claim? And the answer is no. Who promoted this union man, this who advocated, who was on the negotiating committee, who is the president of the SOA and the vice president of the SOA? Who promoted him through the ranks from police officer to sergeant to lieutenant to captain and would have had to, absent violation of the civil service laws in New Jersey, who would have had to have made chief? How many years was Mr. Gordon in his position? Mr. Gordon was with the township of Melbourne for probably 30 years or more. He retired in 2016. Mr. Polardi was there 26 years. In his position as boss, how many years was he in that position, the boss of Mr. Polardi at all? I think he was, I don't know for sure, Your Honor, but he was there when Mr. Polardi came, I believe, as business administrator. He's the person that has to okay all of the promotions, but he does so in conjunction with the civil service rules. He can no longer prevent Mr. Polardi from making chief. Then he could take Donald Trump out of the White House, okay? This man, Mr. Polardi, was going to ascend to the chiefdom no matter what. All he had to do was stay there. There's not, in other words, there's no adverse employment action whatsoever. Mr. Gordon never demoted him, never transferred him, never disciplined, never burdened his associational rights or his free speech rights. It doesn't matter if you believe everything that Mr. Brown said years before Mr. Polardi even filed this lawsuit so they're out of time back in, it doesn't matter if we said, yes, he's a thorn in my side. Yes, he's a union man. Yes, I'm never going to make him chief. These are words that were never said to Mr. Polardi. Mr. Polardi, oh, excuse me. Such a union man, he never went to the union and said that's anti-union animus. Let's file a claim with the Public Employment Relations Commission. We never did that. Mr. Gordon went to Mr. Polardi, went to Mr. Gordon's retirement. You don't have an adverse reaction to whatever the law is on the First Amendment. The test for a retaliation claim for association, you have to have constitutionally protected conduct and that would be the right to associate with the union. Two, it has to be sufficient to deter a person of reasonable firmness from exercising that constitutional right. And then three, there has to be a causal link between the protected conduct and the retaliatory action. I don't see that particular matter being dealt with by the court other than I've done the analysis of free speech. It is literally the same as association. We've both agreed that it's not the same analysis that you do. And I don't, I can't figure out a way not to remand this case. Even though you may win. May I respond to that, Judge? Yep. Judge Wiginton went through the four things that were supposed to be the retaliatory action here. So she, although she didn't do a full analysis, she did enough for us to see exactly what the record says about the evidence. She went through the reports that were done years before by Dr. Fisher. They had no effect on the ability to promote because after those Fisher reports, Mr. Polardi was made captain. She went through the memorandum of agreement that was signed in April, 2014, signed by the union that Mr. Polardi was a member of, two months after the effective date of his retirement, that said, you get this retroactive pay if you're a current employee. All I had to do was say, excuse me, pensions and benefits, pull that application. I don't want to retire for two more months so that I can get that retroactive pay. She went through the chief's position in her, and said, oh, it wasn't available, was it? No, because Chief Webber, the chief went through that. What I am asking you is a legal question. And she says, in footnote four, at the core of plaintiff's freedom of association claim, as the court is the same as his freedom of speech claim, that is that they retaliated against him because he spoke out as an active member of both unions on numerous occasions. Both claims are subject to these requirements. That's not necessarily true, is it? That the analysis is the same and that the claim was of retaliation is exactly the same. But if his claim is, I didn't get the chief's position because I'm a union man, there's nothing on the record to support that if that's all he has to show. If his claim is, I didn't get the retroactive pay because I'm a union man. No, you didn't get it because you weren't a current employee. So if Judge Wiginton is correct that she's following whatever law is there that says, excuse me, if your union status by itself is what you're claiming was burdened, you have to show that you were a member of the union he was and that there was some burdening on it. And because she talked about the fact that his own testimony was, no, I wasn't burdened by it. I didn't lose or get demoted or anything as a result of the reports of Dr. Wayne Fisher. No, I wasn't burdened by the fact that I didn't, a union member and didn't get the chief's position because there was no chief's position to get it wasn't open. Chief Weber came back. He was not entitled to the, there was no opening to go into. OK, so I don't know what more she could have said, except listen, if you're going to pull that out and say that the union association is enough, well, then I guess you have to send it back. But all I'm saying to you is when you send it back, the second and third bonds of the test for a prima facie case has to be addressed. And I'm pretty sure that Jeff Wiggins also already said I don't see him being burdened. Are you asking us to make a decision that the district court did not do? I'm asking you to affirm the district court decision. It's a perfectly well-reasoned decision following the precedent and the non-precedential cases in this circuit. And I think she made all the factual findings when she said, well, Mr. Pilardi said in his deposition, no, I never was not promoted. I was not disciplined. I was not demoted. I wasn't transferred. No, I guess I was made captain. No, I wasn't made chief because I wasn't in the opening. So I think pretty much there's no adverse employment case here. If there isn't an adverse employment actions, we need to accept the fact that Mr. Pilardi voluntarily decided when he was going to retire because he had another cushy job he wanted to take so he could dip into yet another pension fund in New Jersey. That's fine. All legal. He just can't say the law shifts the burden to someone who never burdened his First Amendment speech or union status, notwithstanding any of the things that he claims. Third parties told him hearsay statements to him, which he never breathed. He never complained about he never brought to his union. And he never confronted Mr. Gordon himself to say, hey, I heard you said I'm a foreign decided you'll never promote me to chief. Is that right? Because if that's what you're saying, I'm going down to the Public Employment Relations Commission today and file an unfair labor practice charge next year. Let me ask you a factual question. Mr. Webber became chief in 2011. Is he still? Who is chief now? Chief Webber had to retire mandatorily. May 1st, 2015 at 65. Everybody knew that chief's position would become open. And the two captains that would have been there, but weren't, had one of them had to be one of them had to be chief. And what happened was this was this is really ironic. In 2014, February 2014, Mr. Polardi retired. A year later, the only captain in that position who would have been chief was Bernie Newhouse. Bernie didn't want to be chief. He retired. There were no captains. You know what Tim Gordon had to do? He goes, Oh my God, I've got to do something. I've got like four lieutenants. Somebody has to be made captain. He had to get special dispensation, ask for the examination to be weighed and move somebody into captain before he could get a new chief. That's what happened because Mr. Polardi was not there to be chief. He folded his hand. He voluntarily walked away from the poker table. That's his choice. No one else's. All right. Thank you very much. We'll hear from Mr. Durkin on the bottom. I hesitate to rise. Once I hear a panel say, you may have to send it back. Anything I say could get me in trouble. But in order to hit it squarely, we may have to. The question, the obvious question is, maybe there would have been no harm had Mr. Polardi stayed past 2014. Yes, and that would be speculative. The question I respectfully submit to the court is as a person of reasonably firm disposition, not clairvoyance, not a martyr. Was he entitled to make the decision that he made? Now, I do not want to burden this court, except what I suspect, I would characterize what we just heard as a summation. And I've said before, a jury could hear my evidence and reject it. But one point that's hugely important is that the procedure, patrolman, sergeant, lieutenant, captain, that's tradition. That's not codified anywhere. And the demonstration that the municipality was in the act of retaliation is proven by the municipality's own conduct. They're the ones who went back, Mr. Fisher, that's not even, that's good, but that's not great. Or that's not dispositive. The fact that they went to Chief Hanselot and said, or claimed they said, we want you to be our chief. If there's a better way to demonstrate that all the procedural safeguards that we were just, we heard about. The point is that being pragmatic is not a good thing. In 2011, there is no way, the way, by tradition, that a lieutenant was going to become chief. A then incumbent lieutenant. Right. Yes, sir. So then Mr. Pallotti becomes a captain in 2012. So he's eligible. He could have stayed until 2015 when Chief Weber retired, but did not do so. So even if he has an association claim, it's almost like 10 times 0 is 0 would be the argument that he didn't stay to take advantage of that claim. I accept the court's point. I understand the question, but the answer would be this. With hindsight, we can always say that. Because you can always find a reason that explains why the consequence that occurred might not have happened had you put different weight on a different predicate. If instead, you look at the position that Mr. Pallotti was in at that time, you would say I've been a Milburn officer for 20 years. I'm speaking in gross terms. I've been around the block once or twice. I saw what happened to Lieutenant Brown. I saw what happened to the Fisher reports and what happened when they brought us in and said we're going to bring in the neighboring chief. And I am being told he will not ever make me chief because he sees me as a union man. If at that moment in time, there's nothing I can do. But he was no longer a union man as of 2011, right? No, he was still a union man. He wasn't in leadership. He had his honor. But here's the point. And this point could be rejected. But I don't think it would be. And here's why I would respectfully suggest to you. It's not 10 times zero is zero. If at that moment, a person says, because this is my career, this is my employment, this is my vocation, this is my love. I want to take, I'll meet you halfway. I'll resign as the president of the SOA, which is six or seven guys in a suburban New Jersey police department who are functioning because Milburn required that the PBA be split into two bargaining units. Form over substance, but they do that. As a result of the PERC certification, I have to be, they can't employ me unless I am a member of a New Jersey recognized, certified public bargaining representative. And that's inadequate. If at that moment, I can't undo my past. I was an officer, a union officer. I was vocal. I am who I am. And Mr. Gordon is taking the position that because you were anti-management, that's the best way of looking at this. You are not just a union man. You are anti-management. You are going to stand in the way of my, I've already fractured the union in the fire department. I'm showing you my hand in this police department. I've got the first Fisher report, the second Fisher report. When I am confronted with the unexpected illness and then the convalescence, did he take either one of the steps that we just heard about? Did he say, you know what? We may have to accelerate some of the guys from the ranks. My question to you is, let's assume you have the association claim. It's different from a freedom of speech claim. You make the association claim. How do you win? And what's the remedy? Well, the remedy is extremely simple. The remedy in New Jersey would be a calculation of the damages according to the municipal salary ordinance and the pension contributions by the economists that we already have in the record. I believe his calculation is $434,000, but it's about $400,000. It would be the spread between that which you were earning... Well, the new pay went in what? April 21st of 14? That's right. The new pay went in... And he retired a couple months earlier? Well, he did retire, but he could have stayed until 65. If he had been the chief, he would have stayed. What does the complaint say as to why he retired when he did in 2014? Because he knew he wasn't going to be the chief. And at that time, out of the blue because of all the school shootings, the Milburn Board of Education created the position of school safety coordinator. They wanted it. The state of New Jersey has encouraged school districts to employ either a retired or soon-to-be-retired, experienced police officer because of the coordinating function between law enforcement and school safety. Mr. Polardi was a recognized member of the community. They came to him. They also went to Mr. Gordon and Mr. Gordon did not dissuade them of it. And Mr. Polardi was told that Gordon is not encouraging you to stay. He saw the writing on the wall. He knew that his career, if he was going to stay in the Milburn Police Department, was dead-ended at CAP. He would never be chief. And on that basis, he decided to make the same decision that Lieutenant Brown had made a number of years before. But the argument is, to come 2015, they had no choice but to make him chief. I would respectfully suggest to you, Judge, that is not only not correct. Their own action demonstrated that if confronted with that reality, they would deviate from their own procedure, which is why I took the second moment ago to say it's not codified. It's just tradition. When they said, we're going to bring in this chief from another town, they could have done that at any time. They couldn't bring in a chief from another town. They could appoint a director. The person who came in in 2015 to replace Weber was from another town. Would have been. That was one of the things they said they wanted to do. Who was the person who came in in 2015 to replace Weber? It was a Milburn staffer because Weber recovered and was able to resume the position. They never asked him to be appointed captain for a short period of time. Was that person a member of the union? Yes, for sure. But here, I see the point the court is making. If I say you can be, so long as you are obsequious, the fact that New Jersey law requires you to be a registered voter, but I better not find out you're actually voting. You cannot be a Milburn police officer. You cannot be an officer in any municipality with a certified collective bargaining representative unless you are a member of that union. So it is the same as saying as a citizen, you have the right to vote. You register to vote. I better not find out you're actually voting because then I am going to say that the current person who is the chief is a union member. But you're saying that person has not been in any type of leadership activity within the union. To my knowledge, at the time the record closed in this case, he was not. But more importantly, I would suggest to you that from sergeant to chief less than three years. So here what you have is this reality. An individual was confronted by another individual exercising significant, massive public authority in a small fish pond. Milburn is just a little suburban municipality. But for the people who are there, it's like seeing a tiger on the loose in Central Park. The chance is one in 10 million, but try telling that to the guy looking at the tiger. Mr. Gordon, in the years that he had been there, accumulated his power so that he was the appointing authority. He was the hiring authority. He was the disciplinary authority. He had complete and total power in that town. There's no denying that. At that time, when he was discharging those functions, he could have said, let's accelerate all the things we're talking about. Instead, looking at polarity. And the only reason he says I wasn't going to make polarity chief is you're a union man. It's not before us, but it seems like that's a pretty big hill to climb. Anyway, thank you very much to both counsel, and we'll take the matter under advisement.